**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

───────────────────────────────────────────────

```
RHONDA WILLINGHAM,            )
                             )
     Plaintiff,              )
                             )
     v.                      )
                             )   No.: 2:09-cv-02289
REGIONS BANK,                )
                             )
     Defendant.             )
                             )
```

───────────────────────────────────────────────

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

───────────────────────────────────────────────

Before the Court is Defendant Regions Bank's Motion for Summary Judgment (Docket Entry ("D.E.") 34), filed April 23, 2010.  Plaintiff Rhonda Willingham filed a response in opposition to Defendant's Motion on May 24, 2010. (D.E. 46.)  For the following reasons, Defendant's Motion is GRANTED.

**I.   Background**

Defendant Regions Bank ("Defendant" or "Regions") is the private banking subsidiary of Regions Financial Corporation, a publicly-held corporation based in Birmingham, Alabama.  (See Def.'s Statement of Undisputed Material Facts ("Def.'s Statement of Facts") (D.E. 34-2) ¶ 22.)  Plaintiff Rhonda Willingham ("Plaintiff") began employment as a private banker for Regions on July 1, 2006.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") (D.E. 46) at 3.)  As a private banker, Plaintiff's job

responsibilities mainly consisted of developing and maintaining relationships with Regions's affluent clientele. (Id.; Def.'s Statement of Facts ¶ 1.)  Because Plaintiff largely dealt with Regions's affluent clientele, Plaintiff's office was in the Morgan Keegan Tower located at 50 North Front Street in downtown Memphis, Tennessee which allowed her "more visibility and a 'better opportunity' to expand her client base through relationships and referrals from Morgan Keegan investment bankers."[1]  (Def.'s Statement of Facts ¶ 2.)

In or around May or June 2008, Plaintiff accepted an invitation to be featured in *Cruzin' South*, a magazine published in Olive Branch, Mississippi that "markets to people who enjoy bikes, custom cars, and hot rods."  (Pl.'s Resp. at 5.) Plaintiff appeared on the cover of the July/August 2008 issue of *Cruzin' South* as "Ms. *Cruzin' South* August 2008."[2]  (Def.'s Statement of Facts ¶ 10.)  In addition to the photograph on the cover page, the issue contains approximately ten photographs of Plaintiff posing in various settings with cars, motorcycles, and other individuals.  In particular, one photograph contains Plaintiff posing in a bikini swimsuit sitting on a motorcycle

---

[1]     Morgan Keegan & Company, Inc. is the investment banking, securities brokerage, and asset management subsidiary of Regions Financial Corporation. (See Def.'s Statement of Facts ¶ 22.)

[2]     As Ms. *Cruzin' South*, Plaintiff was allowed to write a brief autobiographical narrative for inclusion in the magazine.  In the narrative, Plaintiff mentioned that she was a private banker but did not mention that she was employed by Regions.  (Def.'s Statement of Facts ¶ 10; Pl.'s Resp. at 6.)

next to another female individual who is also in a bikini swimsuit. (Pl.'s Resp. Ex. F (D.E. 57) at 2.)  Another photograph of Plaintiff appears on a page under the title "I have been Primped."[3]  (Id. at 4-5.)

The July/August 2008 issue was published near the end of July 2008. (Pl.'s Resp. at 6.)  In exchange for her participation as Ms. *Cruzin' South*, Plaintiff was given approximately fifty copies of the July/August 2008 issue.  (Id.) Plaintiff brought several copies of the magazine to her office at the Morgan Keegan Tower and distributed them to several co-workers. (Id.; Def.'s Statement of Facts ¶ 11.)  On July 28, 2008 Darryl Martin, Consumer Banking Executive for Regions, saw a copy of the magazine and advised Joe DiNicolantonio, Regions's West Tennessee Area President, of its existence. (Def.'s Statement of Facts ¶ 12.)  DiNicolantonio obtained a copy of the magazine and forwarded it to Wendy Boughamer, Regions's Human Resources Manager for the West Tennessee area.  (Id.)

Lisa Bailey, Plaintiff's immediate supervisor, also obtained a copy of the magazine.  (Id. at ¶ 13.)  Bailey stated in her deposition that shortly after obtaining a copy of the magazine she received calls from several associates and managers of both Regions and Morgan Keegan expressing concerns regarding Plaintiff's appearance in the magazine. (Id. ¶ 16.)  On July 29,

---

[3]   The "r" in "Primped" is stylistically tilted and a different font color than the other letters in the word. (See  Pl.'s Resp. Ex. F at 5.)

2008 Boughamer and Bailey met with Plaintiff to discuss her appearance in *Cruzin' South* Magazine.  (Id. ¶ 13.)  At the meeting, Plaintiff acknowledged that she agreed to appear as Ms. *Cruzin' South* in the July/August 2008 issue and that she had not received authorization to do so.  (Id.)

Following the July 29 meeting, Boughamer and DiNicolantonio forwarded a copy of the magazine to Kathy Hadfield, Executive Human Resources Director for the Tennessee region.  (Id. ¶¶ 17 & 19.)  After collectively reviewing the magazine, Hadfield, Boughamer, and DiNicolantonio determined that Plaintiff's appearance in *Cruzin' South* Magazine violated the Regions Financial Corporation Code of Business Conduct and Ethics ("Regions Code of Conduct") thus warranting termination of Plaintiff's employment with Regions.[4]  (Id. ¶ 21.)

On July 30, 2008 Plaintiff met with Bailey and Carolyn Moody, a Human Resources employee out of Regions's corporate office in Birmingham, Alabama.  (Pl.'s Resp. at 7.)  Moody notified Plaintiff that Regions was terminating her employment and directed Plaintiff to read and sign a termination notice, which stated:

> The [Regions Code of Conduct] instructs associates
> to be sensitive to any activities, interests, or
> relationships that might conflict with, or even
> appear to conflict with the associate's ability to

---

[4]     The Regions Code of Conduct provides, in pertinent part: "Associates should avoid any outside activity that significantly interferes with their Regions duties.  Associates should not be involved in outside activities that . . . (6) Harm Regions'[s] reputation."  (Pl.'s Resp. Ex. B (D.E. 46-2) at 12.)

act in the best interest of the company.

On Tuesday, July 29, 2008, it was discovered that photos of you had been published in *Cruzin' South* [m]agazine. These photos represented you in a manner that is potentially damaging to your reputation as a Personal Banker and potentially damaging to the reputation of Regions Bank, as you are both an officer and associate of the bank. Further, you have directly distributed copies of the magazine to other associates, thereby assisting in fostering awareness of the photos.

Your actions were incompliant with the [Regions Code of Conduct]. Your actions also demonstrate extremely poor judgment on your part, and again, potentially damaged both your own business reputation and that of Regions Bank. Based on these actions, Regions Financial is terminating your employment effective immediately, Wednesday, July 30, 2008.

(Id.; Pl.'s Resp. Ex. A ("Progressive Discipline Form") (D.E. 46-1).) Plaintiff signed the termination notice acknowledging that effective July 30, 2008 she was no longer employed by Regions. (See Progressive Discipline Form.)

On May 8, 2009 Plaintiff filed the instant lawsuit alleging that Defendant discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. Defendant now moves the Court seeking summary judgment as to Plaintiff's sex discrimination claim.

**II.  Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

5

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## III. Analysis

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that her termination resulted from unlawful sex discrimination in violation of Title VII.

### A.   Sex Stereotyping Claim

Plaintiff relies on the theory of sex stereotyping adopted by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) to support her sex discrimination claim. In Price Waterhouse, the Supreme Court held that making employment decisions based on sex stereotyping is actionable discrimination under Title VII. Price Waterhouse, 490 U.S. at 250 ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."). The Sixth Circuit has defined sex stereotyping as basing employment decisions on "the degree to which an individual conforms to traditional notions of what is appropriate for one's gender."

Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 762 (6th Cir.
2006).  Plaintiff alleges that she was terminated because "her
physical appearance in a non-work related magazine did not
comport with its preferred feminine stereotype which . . .
required her to dress or appear 'conservatively' at all times."
(Pl.'s Resp. at 9.)

     The Court finds, however, that Plaintiff's reliance on Price
Waterhouse is misplaced.  As noted by the Sixth Circuit, "[t]he
Supreme Court in Price Waterhouse focused principally on
characteristics that were readily demonstrable *in the workplace*,
such as the plaintiff's manner of walking and talking *at work*, as
well as her *work attire* and her hairstyle."  Vickers, 453 F.3d at
763 (emphasis added).  Plaintiff concedes that her sex
discrimination claim is based on her employer's reaction to her
appearance in a non-work-related activity.  Thus, like the
plaintiff in Vickers, "[Plaintiff's sex stereotyping] claim fails
because [she] has failed to allege that [she] did not conform to
traditional gender stereotypes in any observable way *at work*."
See id. at 764 (emphasis added).

     B.   **Disparate Treatment Claim**

     Although Plaintiff's sex discrimination claim cannot proceed
under Price Waterhouse, Plaintiff can still recover if she can
prove that that she was terminated for violating the Code of
Conduct while similarly-situated male employees were not

terminated for violating the same.  Under this type of factual allegation, Plaintiff's sex discrimination claim is more properly analyzed as a traditional Title VII disparate treatment claim.

Where, as in the instant case, a plaintiff seeks to establish discrimination in violation of Title VII through indirect evidence of disparate treatment, courts analyze the claim under the McDonnell Douglas/Burdine burden shifting paradigm.[5]  See Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992).  Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination.  See Mitchell, 964 F.2d at 582.  Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the defendant's actions.  Id.  If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination.  Id.

Defendant concedes, for purposes of its motion for summary judgment, that Plaintiff has met her burden of establishing a prima facie case of sex discrimination.  (Def.'s Mem. in Supp. of Mot. for Summ. J. (D.E. 34-1) at 8 n.10.)  Accordingly, the Court will first consider whether Defendant has met its burden of producing evidence that Plaintiff's termination was not the

---

[5]    See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

result of unlawful sex discrimination.  If the Court finds that Defendant has met its burden, the Court will then consider whether Plaintiff has established that Defendant's proffered reason is a pretext for discrimination based on gender.

### (1)  Legitimate, Nondiscriminatory Reason

As discussed *supra,* once a plaintiff meets her burden of establishing a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the defendant's actions.  <u>Mitchell</u>, 964 F.2d at 582.  The defendant's burden at this stage, however, is not a burden of persuasion; rather, it is merely a burden to produce admissible evidence that sets forth the reasons for its actions.  <u>See</u> <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254-55 (1981).  Defendant has submitted the deposition testimony of Kathy Hadfield, Wendy Boughamer, and Joe DiNicolantonio, the ultimate decision-makers, whereby each testified that Plaintiff was terminated because her appearance in *Cruzin' South* magazine violated the Regions Code of Conduct. (Hadfield Dep. (D.E. 38) at 73-77; DiNicolantonio Dep. (D.E. 39) at 41 & 45; Boughamer Dep. (D.E. 44-1) at 59-60.)  Defendant has therefore met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination.

### (2)  Pretext

"[A] plaintiff[] may not simply substitute [his or her] own

10

business judgment for that of the defendant." Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 550 (6th Cir. 2004); see also Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000) ("It is inappropriate for the judiciary to substitute its judgment for that of management.") (citations omitted).  Rather, to survive summary judgment, she must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful discrimination.  Rowan, 360 F.3d at 550.

A plaintiff may establish pretext by showing that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action."  Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 545 (6th Cir. 2008) (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by Geiger v. Tower Auto., 579 F.3d 614 (6th Cir. 2009)). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which [a] jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against him.'"  Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003) (citation omitted).

### (i)  No basis in fact

"The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e. that they are 'factually false.'" Manzer, 29 F.3d at 1084 (citation omitted).  It is undisputed that Plaintiff appeared as Ms. *Cruzin' South* August 2008 in the July/August 2008 issue of *Cruzin' South* magazine.  Thus, Plaintiff cannot argue that Defendant's proffered reason for her termination had no basis in fact.

### (ii) Did not actually motivate the defendant's challenged conduct

The Sixth Circuit has explained that a plaintiff proceeding under this method of proving pretext

> admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal.  The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one.  In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant.  In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

Manzer, 29 F.3d at 1084.

The Court finds that the instant record does not support a finding that Defendant's proffered reason for terminating Plaintiff was not the actual reason.  Plaintiff has submitted no

evidence that, prior to her termination, Plaintiff was treated less favorably than her male co-workers, subjected to sexist jokes or slurs in the workplace,[6] or that any relevant Regions employees made discriminatory remarks about women generally[7] that would allow a jury to infer a discriminatory corporate culture or atmosphere.  Thus, even when viewing the evidence in the light most favorable to Plaintiff, the weight of the circumstantial evidence does not "make it more likely than not" that Defendant's reason for termination was pretext.

### (iii) Reason offered was insufficient to explain the employer's action

The third method of showing pretext generally "consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." Manzer, 29 F.3d at 1084.  The Sixth Circuit has explained that "'the plaintiff and the employee with whom the plaintiff seeks to compare [herself] must be similar in all of the *relevant* aspects' in order for the two to be similarly-situated.'" Johnson, 319 F.3d at 867 (quoting Ercegovich v. Goodyear Tire & Rubber Co.,

---

[6]   See Johnson, 319 F.3d at 868 (finding recurring incidents of racial jokes and slurs in the workplace evidence that the nondiscriminatory reason given by the defendant "did not actually motivate the defendant's challenged conduct").

[7]   See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 354-57 (6th Cir. 1998) (finding discriminatory remarks made by several corporate executives not directed at the plaintiff were nonetheless relevant circumstantial evidence which allowed a jury to infer discriminatory animus).

154 F.3d 344, 352 (6th Cir. 1998)).  In the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.

Plaintiff identifies Peter Knoop as a possible comparator. (Def.'s Resp. at 18.)  A picture of Knoop appeared on the Harbortown 5K Run website in which Knoop is running in a road race without a shirt and with running shorts that show his thighs. (See Def.'s Resp. Ex. N. (D.E. 54).)  Plaintiff contends that the picture of Knoop "running in a road race . . . wearing only skimpy running shorts and running shoes" is comparable to the pictures of Plaintiff that appeared in the July/August 2008 issue of *Cruzin' South* magazine.  Plaintiff thus argues that Defendant's failure to discipline Knoop for engaging in conduct similar to that engaged in by Plaintiff is evidence of pretext sufficient to preclude Defendant from prevailing at the summary judgment stage.  The Court disagrees.

First, Knoop was not employed by Regions; Knoop was employed by Morgan Keegan, the investment banking subsidiary of Regions Financial Corporation.  Defendant has submitted uncontroverted evidence that Morgan Keegan operates independently from Regions

such that Morgan Keegan and Regions have separate management and human resources departments.  (See DiNicolantonio Dep. at 11-12 & 14.)  As a result, Knoop and Plaintiff are not similarly situated because they do not share the same supervisors who would make the ultimate decision to discipline for off-duty conduct.  See Mitchell, 964 F.2d at 583 ("[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor . . . .");  Smith, 220 F.3d at 762-63 (holding that a plaintiff and a comparator were not similarly situated where they were disciplined by different ultimate decision-makers).

Second, even assuming that Knoop and Plaintiff are both employees of Regions, the Court nonetheless finds that Plaintiff cannot rely on Peter Knoop as a comparator.  Notwithstanding the different contexts in which the two photographs were taken, Plaintiff's decision to distribute copies of the magazine at work sufficiently distinguishes her conduct from that of Knoop.  See Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002) (holding that in order for the conduct of a comparator to be the "same conduct," it must be similar in kind and severity).  Because Knoop is the only comparator identified by Plaintiff in her response to Defendant's motion,[8] the Court finds that

_____

[8]    Plaintiff also alleges that numerous Regions and Morgan Keegan employees, including a man identified as "Greg," have violated the Code of Conduct "through questionable and indecent public conduct such public drunkenness, public cursing, lewd behavior, [and] unwelcomed harassment and comments," yet

Plaintiff has failed to identify any similarly-situated employees who were treated differently for conduct comparable to her own.

## IV.  Conclusion

Because Plaintiff cannot assert a claim under <u>Price Waterhouse v. Hopkins</u>, and because she has failed to submit sufficient evidence from which a jury could find that Defendant's reason for her termination was a pretext for unlawful sex discrimination, Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED this 1st day of July, 2010.

<u>/s/ JON PHIPPS McCALLA</u>
CHIEF UNITED STATES DISTRICT JUDGE

---

were not disciplined.  (Def.'s Resp. at 20; Willingham Dep. (D.E. 35) at 100.) This argument—unsubstantiated by evidence in the record—does not create a material issue of fact.  <u>See</u> <u>Grizzell v. City of Columbus</u>, 461 F.3d 711, 724 (6th Cir. 2006) ("It is well settled that '[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination.'" (alteration in original) (citation omitted)); <u>Mitchell</u>, 964 F.2d at 585 (holding that "rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient . . . to establish a claim of discrimination as a matter of law." (citations omitted)).